TENNESSEE GAS PIPELINE
CO., Plaintiff,

v.

MISSISSIPPI CENTRAL RAILROAD
CO.; Lafayette, Marshall & Benton
Regional Railroad Authority; First
National Bank, Oxford, Mississippi;
and other interested parties unknown
to plaintiff, Defendants.

No. 3:99CV177–D–A.

United States District Court,
N.D. Mississippi,
Western Division.

July 18, 2001.

James L. Halford, Brunini, Grantham, Grower & Hewes, Jackson, MS, for Plaintiff.

Goodloe Tankersley Lewis, Hickman, Goza & Spragins, PLLC, Oxford, MS, for Defendant.

## OPINION

DAVIDSON, District Judge.

Presently before the court is the matter of determining the Defendant Mississippi Central Railroad Company's ownership interest in certain real properties where four of the Plaintiff Tennessee Gas Pipeline Company's pipelines are located.[1] In addition, the court has before it the Defendants' Eleventh Amendment challenge to this court's jurisdiction, the Defendants' motion to have a jury hear the title issues presently pending before the court, and the Defendants' assertion that no federal subject matter jurisdiction exists in this cause.

After hearing argument on July 13, 2001, the court hereby finds that the Defendant Railroad possesses prescriptive easements, as opposed to fee simple ownership, across the subject properties. Further, the court finds that the Defendants' motion to have a jury hear the title issues is without merit, as are their Eleventh Amendment and federal subject matter jurisdictional challenges.

### A. Title Issues

In asserting that it owns the subject properties in fee simple, the Defendant Railroad advances two arguments. First, that the Act passed by the Mississippi legislature in 1852 incorporating or chartering the Defendant Railroad conveyed the subject properties to the Railroad in fee simple. Second, that the Railroad holds fee title to the land by virtue of adverse possession. In response, the Plaintiff asserts that the Defendant Railroad owns prescriptive easements in the

---

1. The pipelines, which cross the Defendant Railroad's tracks, are located three to four feet beneath the tracks on the subject properties in Marshall County, Mississippi, and have been so located for over fifty years. The pipelines are utilized to transport natural gas from Texas and Louisiana to major metropolitan areas in the Northeast, including Boston and New York City.

subject properties, but does not own the properties in fee simple. For the reasons set forth below, the court agrees with the Plaintiff.

### 1. The 1852 Act

On March 10, 1852, the Mississippi Legislature passed an Act incorporating the original Mississippi Central Railroad. The Defendant Railroad is the ultimate successor-in-interest of the original Mississippi Central Railroad, and the rail line referred to in the Act is the same rail line at issue in this case.

In the Act, the Legislature gave the Railroad the right to "enter upon and take possession of all such lands ... as may be necessary for the construction or repair of said Railroad." *See* 1852 Act, section 8, page 69. It is this section of the Act that the Defendant Railroad contends gives it the right to claim fee simple ownership of the subject properties.

Other provisions of the same section of the 1852 Act go on, however, to require the Railroad to file an application with a court to take the property if the Railroad and the private landowner cannot reach agreement on compensation. *See* 1852 Act, section 8, page 70. Further, the Act provides that a jury will be empaneled to determine the damages caused by the Railroad's use or occupation of the property. *See* 1852 Act, section 8, page 70.

▮ These provisions lead to the inescapable conclusion that the 1852 Act merely gave the Railroad the right of eminent domain, similar to the right Tennessee Gas has under 15 U.S.C. § 717f(h) and under Miss .Code Ann. § 11–27–47. The 1852 Act makes no mention whatsoever of any fee ownership interest the Railroad may have been granted.

Next, the Defendant Railroad cites several United States Supreme Court and lower court decisions in support of its contention that railroad land grants are in the nature of fee title. All of the cited decisions, however, involve legislative grants of public land, not private land, to railroad companies; as such, these cases are distinguishable from the facts of this case. *See, e.g., Choctaw, Oklahoma & Gulf R.R. Co. v. Mackey,* 256 U.S. 531, 538, 41 S.Ct. 582, 584, 65 L.Ed. 1076 (1921); *Northern Pac. Ry. Co. v. Townsend,* 190 U.S. 267, 270, 23 S.Ct. 671, 672, 47 L.Ed. 1044 (1903); *Noble v. Union River Logging R.R. Co.,* 147 U.S. 165, 176, 13 S.Ct. 271, 274, 37 L.Ed. 123 (1893). In all of these cases, no purchase from a private landowner, or condemnation of private land, was required. Congress, or a state legislature, may of course make an outright grant of public owned land to a railroad, and the cited decisions simply clarify that any such grant is typically in the nature of a fee simple, even when it is not so denominated.

As such, the 1852 Act will simply not bear the weight the Defendant Railroad contends it will. Nowhere in the Act do the words "fee" or "fee simple" appear. In fact, the procedure set forth in section 8 of the Act makes clear that the Act merely grants the railroad the right of eminent domain, as opposed to an outright grant of land. And, the land records of Marshall County do not reflect that any condemnation proceedings were ever commenced by the Defendant Railroad, nor are there any recorded deeds from land owners conveying property to the Defendant Railroad, nor are there any Court decrees conveying title from the land owners to the Defendant Railroad.[2] Hence, the court finds

---

**2.** In order for its purported ownership interest in the properties to be valid against a subsequent purchaser, the Defendant Railroad must have recorded its interest in the properties with the local chancery court. Miss.Code Ann. § 89–5–1.

that the Defendants' assertion that the 1852 Act granted the Defendant Railroad fee simple ownership of the subject properties is without merit.

## 2. Adverse Possession

The Defendant Railroad next argues that, because it has been occupying railroad tracks across the subject properties for over 150 years, it has acquired fee simple title in the land by virtue of adverse possession.

■■■■ The elements required to establish a claim for adverse possession of land and the elements that are required to establish a prescriptive easement are identical. *Thornhill v. Caroline Hunt Trust Estate*, 594 So.2d 1150, 1152–53 (Miss. 1992). The Mississippi Supreme Court has held, in a case involving a disputed deed of property to a railroad, that where an easement will satisfy a railroad's purposes, a prescriptive easement—and not fee ownership—will be the interest deemed to be possessed by the railroad. *New Orleans & Northeastern R.R. v. Morrison*, 203 Miss. 791, 35 So.2d 68, 70 (1948). In other words, a railroad does not gain fee title to property simply by virtue of engaging in railroad operations and utilizing railroad tracks that run over the property. *New Orleans & Northeastern R.R.*, 35 So.2d at 71; *see also Kansas City*

*Southern Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834 (10th Cir.1973).[3]

■■■■ Here, easements will satisfy the Defendant Railroad's purposes. The railroad tracks across the land are utilized solely for railroad operations, and the Defendant Railroad has never used the land for any other purpose. Prescriptive easements that allow the Defendant Railroad to conduct railroad operations across the subject properties is sufficient, therefore, to meet the Defendant Railroad's needs, and fee simple ownership is not required. As such, the court holds that the Defendant Railroad has not acquired fee title to the subject properties by virtue of adverse possession. Instead, the court holds that the Defendant Railroad has gained prescriptive easements across the properties, which the Plaintiff does not dispute.

■■■■ In a similar case involving a railroad suing a pipeline company for damages associated with the pipeline company's location of its pipelines under the railroad's tracks, a federal appeals court held that while a railroad's easement rights are substantial and worthy of enforcement, those rights cannot deprive the owner of the servient estate or those claiming through such owner from making use of the land below the surface, when the

---

The court notes that the Defendant Railroad possesses a quitclaim deed executed by LM & B in December of 1993, that quitclaims any interest in the subject properties possessed by LM & B to the Defendant Railroad. A quitclaim deed, however, only serves to pass to the grantee (here the Defendant Railroad) whatever interest the grantor (here LM & B) may hold in the property, if any; the grantor by quitclaim deed makes no representation, covenant or warranty of title, and the grantee may not complain if it receives a lesser interest than expected. *Rosenbaum v. McCaskey*, 386 So.2d 387, 389 (Miss.1980). Here, there is no evidence that LM & B, the quitclaim grantor, possessed any ownership interest whatsoever in the subject properties. As

such, no interest passed from LM & B to the Defendant Railroad by virtue of the 1993 quitclaim deed.

**3.** The Defendants cite *Yazoo & Miss. Valley R.R. Co. v. Bolivar County*, 146 Miss. 30, 111 So. 581, 582 (1927), in support of their position. The *Yazoo* case, however, involves public sixteenth section land and a Mississippi statute specifically providing for adverse possession of sixteenth section land. *Yazoo*, 111 So. at 582. Here, there is no sixteenth section land at issue, only private land. As such, *Yazoo* is inapplicable to the facts of the case at bar.

use does not interfere with the maintenance and operation of the railroad. *Kansas City Southern Ry. Co.*, 476 F.2d at 834–35. In line with that court's ruling, this court finds that a jury must be empaneled in this cause to determine if the Plaintiff's use of the land below the Defendant Railroad's tracks has interfered with the Defendant Railroad's prescriptive easement rights in the subject properties, and if so, the amount of compensation to which the Defendant Railroad is entitled.

### B. Motion to Have Jury Hear Title Issues

The Defendants assert that factual issues remain regarding the title issues in this case, because the court, on May 3, 2001, denied the Plaintiff's motion for summary judgment as to these issues.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if two conditions are met. First, there must be no genuine issue as to any material fact; second, the moving party must establish that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). It has long been established that both conditions must be satisfied before an entry of summary judgment may be entered. *United States Steel Corp. v. Darby*, 516 F.2d 961, 962 (5th Cir.1975). In addition, the Supreme Court has plainly held that trial courts may deny a motion for summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The court's May 3, 2001, order denying the Plaintiff's motion for summary judgment clearly stated that the Plaintiff's motion was being denied based upon the Plaintiff's failure to establish that it was entitled to judgment as a matter of law,

the second prong in a summary judgment inquiry. Nowhere does the order state or imply that the court denied the Plaintiff's motion due to the court's belief that genuine issues of material fact existed as to the title issues. Further, the Defendants' Motion to Have Jury Hear Title Issues does not identify the genuine issues of material fact it believes still exist, and none were revealed at the July 13, 2001, hearing of this matter. Instead, the Defendants simply argue that such issues must exist because the court denied the Plaintiff's motion for summary judgment. As set forth above, that is simply not the case. As such, the Defendant's motion to have a jury hear the title issues shall be denied.

### C. Eleventh Amendment Immunity

 The Defendants have also asserted an Eleventh Amendment immunity defense, stating that because the Defendant Lafayette, Marshall & Benton Regional Railroad Authority (LM & B) is purportedly an arm of the State of Mississippi, it is entitled to Eleventh Amendment immunity. Further, the Defendants argue, because LM & B is an indispensable party that is incapable of being joined due to this immunity, this cause should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure. The court finds, however, that LM & B is a local, autonomous entity, not an arm of the state, and is therefore not entitled to Eleventh Amendment immunity.

In determining whether an entity is local or an arm of the state, the Fifth Circuit considers six factors:

(1) whether state statutes and case law characterize the agency as an arm of the state;

(2) the source of funds for the entity;

(3) the degree of local autonomy the entity enjoys;

(4) whether the entity is concerned primarily with local, as opposed to statewide, problems;

(5) whether the entity has authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.

*Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 131 (5th Cir.1986).

Factor number one illustrates the local nature of LM & B. The relevant state statutes, particularly Miss.Code Ann. § 19–29–9, characterize regional railroad authorities as local entities, and provide that two or more counties may, by resolution of each, create a regional railroad authority. *See* Miss.Code Ann. § 19–29–9. Further, LM & B's fifteen commissioners are locally appointed by the Lafayette, Marshall, and Benton Counties' respective Boards of Supervisors. As such, factor number one weighs against a grant of immunity.

Factor number two, which the Fifth Circuit recognizes as the most important factor, also illustrates that LM & B is not entitled to Eleventh Amendment immunity. LM & B's funding comes from a variety of sources, including local ad valorem taxes and the issuance of bonds. Importantly, the ad valorem taxes are dispersed by the county, and the bonds issued by LM & B are explicitly deemed to not be debts of the state. *See* Miss.Code Ann. § 19–29–29 ("The bonds and other obligations of an authority ... shall not be a debt of the city, the county, the sate or any political subdivision thereof ..."). Under similar circumstances, the Fifth Circuit held that factor number two weighs heavily against a finding of immunity. *Pendergrass v. Greater New Orleans Expressway Comm'n,* 144 F.3d 342, 345–6 (5th Cir. 1998) (holding where entity's bonds were not debts of state, and only state funds

received by entity were from license taxes, factor two "weighs heavily" against classifying entity as arm of state).

Factor number three, local autonomy, illustrates that LM & B and its locally appointed commissioners exercise extensive and independent control over LM & B's business activities. There is no evidence presently before the court indicating any substantive state control over LM & B's activities. As such, this factor also supports a denial of immunity for LM & B. Likewise, because LM & B's activities are almost exclusively directed locally, factor four does not support a grant of immunity for LM & B. Factor five has been conceded by LM & B, so it also supports a denial of immunity. And, finally, factor six weighs against a grant of immunity—LM & B has the right to hold and use property in its own name. Miss.Code Ann. § 19–29–17. As such, this factor supports a denial of immunity. *Pendergrass,* 144 F.3d at 347; *McDonald v. Bd. of Miss. Levee Comm'rs,* 832 F.2d 901, 908 (5th Cir.1987).

In accordance with the foregoing analysis of the relevant factors, the court finds that LM & B is a local, autonomous entity, not an arm of the state, and is therefore not entitled to Eleventh Amendment immunity from suit.

### D. Supplemental Jurisdiction

The Defendants also argue that because the Plaintiff takes the position that the Defendants do not own the properties in question in fee simple, the Plaintiff has no federal condemnation claim under the Natural Gas Act, and therefore neither federal question nor federal supplemental jurisdiction exists.

The court finds, however, that the Plaintiff has simply pled in the alternative. *See* Fed.R.Civ.P. 8(e)(2); *General Guar. Ins.*

*Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928–29 (5th Cir.1970). The Plaintiff first alleges that the Defendant Railroad does not possess fee ownership rights in the properties at issue, but rather possesses prescriptive easements across the properties and is not entitled to any compensation because the Plaintiff has not interfered with the Defendant Railroad's easement rights in the property. Then, in the alternative, the Plaintiff argues that, if the Defendant Railroad does possess fee ownership of the subject properties, the Plaintiff has the right, under federal law, to condemn the land. *See* 15 U.S.C. § 717f(h).

Rule 8(e)(2) of the Federal Rules of Civil Procedure explicitly provides that parties may plead alternative grounds of relief "regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed.R.Civ.P. 8(e)(2). As such, the Defendants' jurisdictional argument is without merit, and this court possesses federal question jurisdiction over the Plaintiff's federal condemnation claim. Further, the court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the Plaintiff's remaining claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ").

■ Here, the court finds that it has original jurisdiction over the Plaintiff's federal condemnation claim. Further, the court finds that the Plaintiff's remaining claims are so related to the Plaintiff's federal claim that they form part of the same case or controversy. As such, the court has supplemental jurisdiction over all of the Plaintiff's claims, and the Defendants' assertion that federal jurisdiction does not exist in this cause is without merit.

### E. Conclusion

In sum, the court finds that the Defendant Railroad possesses prescriptive easements, and not fee simple ownership, in the subject properties. As such, a jury must be empaneled at the trial of this cause. The jury must first determine whether the Plaintiff has interfered with the Defendant Railroad's prescriptive easement rights. Should the jury find that the Plaintiff has interfered with the Defendant Railroad's rights, then the Defendant Railroad is entitled to just compensation, pursuant to the Plaintiff's federal statutory right to condemn the Railroad's interest in the property. *See* ("). The amount of compensation that should be awarded to the Defendant Railroad pursuant to condemnation is likewise a question for the jury.

Further, the court finds that the Defendants' motion to have a jury hear the title issues is without merit, as is their argument that the Defendant LM & B is entitled to Eleventh Amendment immunity, and their argument that the court lacks jurisdiction to adjudicate this dispute.

A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendant Mississippi Central Railroad Company possesses prescriptive easements in the four subject properties (see Exhibit J of the Amended Complaint—Plat of the Subject Properties), giving it the right to conduct railroad operations on the subject properties without interference;

(2) the Defendants' motion to have jury hear title issues (docket entry 76) is DENIED; and

(3) a jury shall be empaneled at the trial of this cause to determine if the Plaintiff has interfered with the Defendant Railroad's prescriptive easement rights in the subject properties, and if so, the just compensation to which the Defendant Railroad is entitled.