FOSTER *et al. v.* JEFFERSON COUNTY.

(Division B.   Sept. 22, 1947.   Suggestion of Error Overruled Nov. 10, 1947.)

[32 So. (2d) 126.   No. 36492.]

On Suggestion of Error.

(Division B.   November 10, 1947.)

[32 So. (2d) 568.   No. 36492.]

**Satterfield, Ewing & Hedgepeth** and **Dan H. Shell,** all of Jackson, for appellants.

Greek L. Rice, Attorney General, by John E. Stone, Assistant Attorney General, and Corban & Corban, of Fayette, for appellee.

634

Argued orally by **John Satterfield**, for appellants, and by **John E. Stone**, for appellee.

**Griffith, P. J.**, delivered the opinion of the court.

Appellee county, as statutory trustee, instituted suit seeking to cancel all claims of the defendants to Sec. 16, Tp. 9 N. R. 4 E. in said county. Three of the defendants,

appellants here, appeared and defended as to the west half of said section, and have appealed from an adverse decree.

By Secs. 2015 to 2019, inclusive, Code 1871, it was provided that the school directors of each district, upon an affirmative vote of the qualified electors of the township could sell the lands appropriated for the use of schools in that township. The several steps to be taken to effectuate such a sale were specified, concluding with the provision that ''The school directors are hereby authorized and required to execute all conveyances, on behalf of the township, for any lands sold as herein provided . . .''

On January 1, 1875, L. Long, Superintendent of Public Education of the county and ex officio president of the board of school directors, acting in his official capacity, and in consideration of $100 paid, conveyed the N½ of NW¼ of said section to Emeline E. Stevens, and on the same day the said Long acting as aforesaid, and in consideration of $100 paid, conveyed the SW¼ and the S½ of NW¼, less 13.79 acres off the east side, to Wm. A. Abbott, both deeds being duly acknowledged on February 3, 1875, and recorded. The books of the county treasurer show the payment of the $200 under date February 4, 1875.

Soon after the execution of the foregoing deeds the grantees therein went into the actual possession and occupancy of the lands therein described, and they and their lawful successors in title have remained so in actual possession and occupancy of the whole thereof continuously for more than seventy years. Appellants here are the successors in title as aforesaid to all the land for which they have defended, and as described in the two deeds aforementioned, and they rely not only upon the said deeds, but also upon the twenty-five years statute of limitation applicable to schools lands, in effect since the Code of 1892. That statute, now Section 6596, Code 1942, reads as follows:

"Adverse possession for a period of twenty-five years, under a claim of right or title, shall be prima facie evidence in such case that the law authorizing the disposition of the lands has been complied with and the lease or sale duly made."

Appellants have gone to some trouble to show by pertinent authority that the statute authorizing the sale of these township lands was within the constitutional power of the Legislature, there being nothing in the Constitution of 1869 to prohibit it. The Attorney General in response does not challenge the constitutionality of the cited statute, and the question not being raised by the state or county, the case will be treated as if no such point has been mentioned. State ex rel. Jordan v. Gilmer Grocery Co., 156 Miss. 99, 122, 125 So. 710.

But the State relies on what was said by this Court in Weiler v. Monroe County, 76 Miss. 492, 25 So. 352, to the effect that the court had been wholly unable to find any legislative authority for the sale of sixteenth section lands and that a lease was the utmost that the claimant could assert. That case had been before the Court in 74 Miss. 682, 21 So. 969, 22 So. 188. The reports of these two cases show that what the Court was dealing with were the statutes of 1839, and those previous thereto. The language of a Court opinion must be interpreted in the light of what the Court was considering at the time. Certainly the Court could not have been looking to statutes subsequent to 1839, for if so, the cited sections of the Code of 1871 would have made the statement of the Court impossible. Be that as it may, it requires no elaboration of discussion to support the declaration that it is not within the power of any court to wipe a plain statute out of an official code by the ipse dixit that there is no such statute.

The State contends that the two deeds made for the school authorities on January 1, 1875, were not made by the school directors as the statute required, but were made

by the president thereof. A sufficient answer to this contention is contained in Forsdick v. Tallahatchie County, 76 Miss. 622, 24 So. 962. The State contends, also that the minutes of the Board of Supervisors contain no order appointing appraisers as required by Sec. 2016, Code 1871, and that since a board of supervisors can speak only by its minutes, this means that no appraisers were appointed, and that there was a failure to take an essential step to the validity of the sale.

The showing thus made by appellee is one negative in its nature, whereas it was distinctly held in Yazoo & M. V. R. Co. v. Bolivar County, 146 Miss. 30, 111 So. 581, that the showing to displace the curative effect of the twenty-five years' statute must be an affirmative showing that there was no valid sale or lease. The force of the twenty-five years' statute is such that it will support the presumption that the order appointing appraisers "was in fact made but that by some inadvertence it failed to be recorded." Hawkins v. City of West Point, 200 Miss. 616, 27 So. (2d) 549, 550.

Here, to summarize, the undisputed facts are that appellants and their predecessors in title have been the undisputed, continuous and actual occupants of the lands for more than fifty years since the Code of 1892 under recorded deeds in fee simple purporting to have been executed by lawful authority, and if they can be put off the lands because a record cannot now be found that this or that statutory step was taken, then the twenty-five years statute had as well never been enacted. To bridge such things was the purpose of the statute. The two deeds in 1875 to the predecessors in title of these appellants evidenced a claim of right in their behalf, was color of title in fee simple, and their possession under that claim and color for more than twenty-five years after 1892, in the absence of an affirmative showing that no valid sale was in fact made, renders the title acquired by this adverse possession under claim of title such that

it cannot be successfully assailed, to adopt in effect the concluding paragraph of the Court's opinion in Yazoo & M. V. Railroad Co. v. Bolivar County, supra.

Appellee says, however, that the twenty-five years' statute cannot be interposed in behalf of appellants, because appellee says a ninety-nine year lease on the entire section 16 was made on January 23, 1837, to John Barnes, under the Act of February 27, 1833, so authorizing, and that this lease did not expire until March 4, 1936; that appellee had therefore no right to the reversion until the latter date, and that adverse possession under the twenty-five years' statute would not begin against appellee until that time, which would have thence run much less than the twenty-five years period.

The recorded instrument which the county presents is not a ninety-nine year lease to John Barnes, but at most is an agreement to give him such a lease. The instrument recites that it was executed for a credit consideration of four notes payable in one, two, three and four years. The statute expressly provided that "it shall be the duty of the trustees on the final payment of the money which may be due and not before, to convey" the ninety-nine year leasehold interest. There was no authority to execute a ninety-nine year lease to Barnes on January 23, 1837, or at any time thereafter until all his four notes were paid, so that the paper presented is no ninety-nine year lease or any lease, as a valid lease, at all.

Appellee says, however, that the presumption is that Barnes paid the notes and went into possession and thereby became entitled to the lease and that same now stands good in equity. Had Barnes gone into possession, or had otherwise exercised any substantial rights over the land, a presumption of payment would arise by the long lapse of time. There is no presumption that a purchaser has gone into possession. Taylor v. Twiner, 193 Miss. 410, 420, 9 So. (2d) 644. Appellants denied that Barnes ever paid the notes, or went into possession or exercised any

rights over the land whatsoever. There was no proof of payment, wherefore the burden was on appellee to show by proof that Barnes did go into possession, and remained there well beyond the due date of the notes, or else that thereafter he exercised the rights mentioned, but no such proof appears anywhere in the record, hence the presumtion of payment is not maintained.

On the contrary the proof shows that Barnes in all the years had never made any conveyance or assignment whatever of any interest in the land. The assessment rolls for 1842, 1843, 1846 and 1854, being all that could be found on a search, shows no assessments to him and none for the lands in that Sixteenth Section but the assessment roll of 1846 does show the entire section 16 Tp. 9 R. 4 E. to be school land.

The inference from the record as a whole is that Barnes did not, in fact, pay his lease money, was never entitled to such a lease, and that he abandoned the effort to secure it as so often happened throughout the state on the bursting of the bubble of the flush times of 1835-7, the collapse following closely upon or toward the close of the year 1837, as the history of that period informs us,—informs us how, during the inflationary period of three years from 1835 to 1837, inclusive, speculation in everything on credit, including land titles, was the order of the day, and how at the end of the latter year credit was gone, money had disappeared, and nobody paid or could pay anything—how the controversy with the Bank of the United States and the declining price of cotton brought about the panic beginning in the fall of 1837, which prostrated the whole financial, industrial and commercial system of the country for six or seven years.

Our conclusion then is that Barnes never had a ninety-nine year lease, and that therefore such a supposed lease presents no impediment to the application of the twenty-five years' statute of adverse possession in appellant's favor.

Reversed and decree here for appellants.

ON SUGGESTION OF ERROR.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

Appellee says in its suggestion of error that the Court was in error, as regards the alleged lease to John Barnes, that the lease was made under the Act of February 27, 1833, and appellee now says, and for the first time, that the lease was made under the Act of December 16, 1830.

In appellee's brief, on the submission of this case to the Court, after quoting in full the Act of February 27, 1833, the following is stated: "It is under the provisions of the above statute that the lease was given on January 23, 1837 . . . to John Barnes . . ." Appellee thereby planted itself squarely upon the Act of February 27, 1833, and made no mention anywhere in its brief of the Act of December 16, 1830, whence the Court was under no duty to search through volume upon volume of the old acts of the Legislature on the supposition or assumption that counsel for appellee had missed something and had not relied on the correct Act.

Not only will the Court, as a general rule, refuse to consider new points first made on a suggestion of error (Crabb v. Wilkinson, 202 Miss. 274, 32 So. (2d) 356), but for the stronger reason will not entertain a suggestion of error which abandons a position squarely taken on the original submission, and seeks to put the Court in error by the presentation of a new and different position not theretofore mentioned to the Court. Delta Cotton Oil Company v. Elliott, 179 Miss. 200, 172 So. 737, 174 So. 550. Compare Frederic v. Board of Supervisors, 197 Miss. 293, 300, 20 So. (2d) 92, 671.

It is interesting to note that Section 5 of the Act of December 16, 1830, reads as follows: "It shall be the duty of the trustees, whenever they lease any land according to the provisions of this Act, to cause to be redeemed in the clerk's office of the county court of the proper

county, the whole of the proceedings relating thereto,'' and to note further that nothing but the case itself appears to have been recorded, and at the same time to note that one of appellee's main contentions is that all the proceedings in regard to the sales to appellants' predecessors in title made in 1875 do not appear of record.

Suggestion of error overruled.